*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

NINGAN HU,

        Defendant-Appellee.

UNPUBLISHED
March 14, 2019

No. 340780
Livingston Circuit Court
LC No. 16-023578-FH

Before: METER, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's dismissal without prejudice of four counts of criminal sexual conduct against defendant following the trial court's denial of plaintiff's request for an adjournment of trial. On appeal, plaintiff challenges various pretrial rulings, as well as the trial court's denial of its motion for an adjournment. We affirm.

## I. FACTS

The prosecution charged defendant, a Chinese national who lived and worked as a driving instructor in Windsor, Ontario, Canada, with four counts of criminal sexual conduct in relation to the sexual assaults of two women during separate incidents at a home in Michigan.[1] The two women, also Chinese nationals, were foreign exchange students who attended college in Windsor. Each woman separately hired defendant to provide driving instructions so that they could acquire driver's licenses.

---

[1] The prosecution charged defendant with two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e, related to the sexual assault involving YZ1. The prosecution charged him with one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d, related to the sexual assault of YZ2. YZ1 and YZ2 are not related and were not acquaintances.

The allegations giving rise to the charges related to YZ1 and YZ2 were similar. The prosecution alleged the facts set forth hereafter.

## A. REGARDING YZ1

On May 21, 2016, defendant took YZ1 from Windsor, Ontario to Michigan to practice driving. In Michigan, defendant purchased alcohol and then took YZ1 to a house in Brighton. Defendant later prepared a meal and while they dined, defendant spiked YZ1's drinks with alcohol. Although YZ1 became sick, defendant urged her to keep drinking and she obliged him because her cultural mores required her to respect and obey her elder and instructor.

When YZ1 went to the bathroom to vomit, defendant followed and began sexually assaulting her. Despite her resistance and refusals, he penetrated her vagina with his finger. YZ1 testified further at defendant's preliminary examination that defendant knelt down with his "reproduction organ" facing her and, although she did not actually see what happened next, she felt an object penetrate into her vagina. After the sexual assaults, YZ1 later located her glasses, pants, and purse which contained her cell phone, and quietly left the house. She went to a gas station and called her roommate. A police detective arrived at the gas station, whereupon YZ1 described to him what happened. The police arranged for her to be taken to a hospital for a sexual assault examination. Police arrested defendant on May 22, 2016.

## B. REGARDING YZ2

YZ2, the other Chinese foreign national exchange student, heard the news of defendant's arrest thru social media. She contacted the police who interviewed her in June 2016. She informed police that defendant served as her driving instructor during late 2014 and in conjunction with a driving lesson on November 1, 2014, defendant took her from Canada to Michigan to practice driving. In Michigan, defendant purchased food and alcohol, took her to a house and prepared a meal. During the meal, defendant spiked YZ2's beverage. YZ2 wanted to refuse the drinks, but because of defendant's elder status and her cultural mores, she felt that she could not refuse. YZ2 began to feel drunk, in a dreamlike state, and lost consciousness. When she regained consciousness, she noticed vomit in her hair and felt her jeans and underwear being pulled down by someone. Her bra was unhooked and she felt someone touching her back. Although she could not see exactly what happened, YZ2 felt something enter inside her vagina while defendant positioned himself in front of her legs. YZ2 later awoke around midnight in a bedroom dressed. The next morning, defendant asked YZ2 if she knew what happened. He told her that he took care of her after she passed out into her food at the table. Because she was a Chinese citizen living in Canada, YZ2 did not know whom to contact, so she did nothing until she learned of defendant's arrest.

## II. PROCEDURAL HISTORY

After the police took defendant into custody on May 22, 2016, because he spoke Mandarin and understood little English, the detectives arranged for an interpreter. On the

morning of May 23, 2016, detectives questioned defendant with the interpreter's assistance and recorded the interview. At the beginning of the interview, one detective read defendant his *Miranda*[2] rights, and after reading each line on an advice-of-rights form, the interpreter translated each line to defendant. The detective, through the interpreter, asked defendant whether he understood his rights. Defendant affirmed his understanding, and signed the advice-of-rights form. Defendant then gave a statement to the police.

Defendant moved to suppress his statement to the detectives and argued that the translator's interpretation of the *Miranda* rights failed to advise him that he had a right to the assistance of counsel at the time of questioning. The trial court conducted a three-day evidentiary hearing. The trial court found that the detective failed to properly advise defendant of his right to counsel. Accordingly, the court granted defendant's motion to suppress his statement.

Defendant filed a motion in limine to prohibit the prosecution from using the term "victim" at trial. Defendant also moved to prohibit the prosecution from referring to any drugs, or an attempt by defendant to drug the complainants, other than by serving them alcohol. At the August 15, 2017 hearing, the trial court granted defendant's motion to prohibit use of the term "victim." The trial court denied defendant's motion to exclude any reference to drugs or an attempt by defendant to drug the complainants. The prosecution moved for a stay pending interlocutory appeal and the trial court denied the prosecution's motion for stay. At the conclusion of the hearing, the trial court scheduled the trial for September 18, 2017.

The trial court's rulings prompted plaintiff to file on September 5, 2017, an interlocutory application for leave to appeal to this Court and motions for immediate consideration and for a stay. This Court granted immediate consideration, denied a stay, and denied plaintiff leave to appeal "for lack of merit in the grounds presented." *People v Hu*, unpublished order of the Court of Appeals, entered September 13, 2017 (Docket No. 339979). Plaintiff then filed an application for leave to appeal this Court's order to our Supreme Court.

On September 12, 2017, plaintiff moved in the trial court for a stay pending appeal and requested adjournment of the trial. On September 15, 2017, three days before the scheduled trial, the trial court held a hearing on plaintiff's motion for stay pending appeal and denied it. During the hearing the prosecution brought an oral motion to adjourn on the ground that one of its complainant witnesses would be unavailable for trial because her visa expired. The prosecution stated that it learned two days earlier of her visa expiration when making travel arrangements for the witness to attend the trial. The prosecution requested a 30-day continuance to give the witness time to obtain a crime victim visa. The prosecution stated that it could not proceed without one of the complainants. That prompted defendant to move for dismissal of the charges. The trial court explained that this Court denied plaintiff's motion for stay pending appeal and ruled that no further delay was necessary. The trial court denied plaintiff's motion for adjournment or continuance and granted defendant's motion to dismiss without prejudice. The trial court entered a dismissal order.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1996).

After plaintiff filed its claim of appeal from the dismissal order in the present case, defendant moved to dismiss plaintiff's pending application for leave to appeal in the Supreme Court. Thereafter, the Supreme Court denied plaintiff's application "as moot." *People v Hu*, 501 Mich 911; 902 NW2d 880 (2017).

## III. ANALYSIS

## A. PRETRIAL MOTIONS

Plaintiff challenges the trial court's pretrial rulings that: (1) granted defendant's motion to suppress his custodial statement; (2) granted defendant's motion to prohibit the prosecutor from referring to the complainants as "victims" at trial, and (3) granted in part and denied in part defendant's motion to prohibit any reference at trial to drugs or an attempt by defendant to drug the complainants. Defendant argues, and we agree, that plaintiff is precluded from challenging these rulings under the law-of-the-case doctrine because plaintiff previously challenged each of these rulings in its application for leave to appeal that this Court denied "for lack of merit in the grounds presented."[3]

Under the law-of-the-case doctrine, "a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001) (citation omitted). Questions of law already decided by this Court cannot be decided differently in a subsequent appeal in the same case. *Id*. Denial of leave to appeal where the court expresses no opinion on the merits does not implicate the law-of-the-case doctrine. *Grievance Admin'r v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). However, this Court has consistently held that denial of an application "for lack of merit in the grounds presented" is a decision on the merits of the issues raised that bars later review of those issues pursuant to the law-of-the-case doctrine. See, e.g., *People v Hayden*, 132 Mich App 273, 297; 348 NW2d 672 (1984); *People v Douglas*, 122 Mich App 526, 530; 332 NW2d 521 (1983); *People v Wiley*, 112 Mich App 344, 346; 315 NW2d 540 (1981).

Because plaintiff challenged the propriety of the trial court's three rulings and raised the same three issues in its application for leave to this Court, and this Court previously denied plaintiff's application "for lack of merit in the grounds presented," the law-of-the-case doctrine applies, barring this Court from revisiting the issues. Accordingly, we decline to consider them.

## B. MOTION TO ADJOURN TRIAL

Plaintiff argues that the trial court erred by denying its motion for an adjournment three days before trial without making the findings required by MCR 2.503(C). We disagree.

We review a trial court's ruling on a motion for an adjournment or continuance for an abuse of discretion. *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002). An abuse of

---

[3] *People v Hu*, unpublished order of the Court of Appeals, entered September 13, 2017 (Docket No. 339979), lv den 501 Mich 911 (2017).

discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

A motion for an adjournment or continuance must be based on good cause. MCR 2.503(B)(1); *Jackson*, 467 Mich at 276. MCR 2.503(C) governs a motion to adjourn based on the unavailability of a witness and provides:

> (1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.
>
> (2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.
>
> (3) If the testimony or the evidence would be admissible in the proceeding, and the adverse party stipulates in writing or on the record that it is to be considered as actually given in the proceeding, there may be no adjournment unless the court deems an adjournment necessary.

Plaintiff asserts that *Jackson* supports its argument that the trial court abused its discretion by denying its motion for adjournment. In *Jackson*, a subpoenaed witness failed to appear on the date set for trial and the police learned that he left the state. *Jackson*, 467 Mich at 273. The prosecution moved to admit the witness's preliminary examination testimony and the trial court conducted a hearing to determine whether the prosecution had exercised "due diligence" in attempting to produce the witness for trial. *Id*. at 274. The evidence established that the witness previously cooperated with the prosecution by voluntarily furnishing a statement to the police and testifying at the preliminary examination. Further, the police served the witness a subpoena one month before trial at which time he gave no indication that he would not appear. *Id*. The trial court found that the prosecution failed to exercise due diligence because it made no efforts to produce the witness apart from serving the subpoena. *Id*. In lieu of admitting the witness's preliminary examination testimony, the court gave the prosecution an opportunity to search for the witness and offered to issue a bench warrant for his arrest. In response, the prosecution moved for a continuance. The defendant opposed the continuance and moved to dismiss. *Id*. at 274-275. Following discussion with the attorneys, the trial court found no reason why the matter should be continued. Therefore, it dismissed the matter without prejudice. *Id*. at 275.

Our Supreme Court explained:

> The trial court did not articulate clearly the basis for its decision to deny a continuance. It did not discuss the requirements of the court rule or explain precisely how the prosecution had failed to satisfy those requirements. Despite these failings, the court did make statements during the proceedings that we presume formed the basis for its decision. The court's apparent reasoning, however, was "so palpably violative of fact and logic[] that we conclude it abused its discretion. [*Id*. at 277 (citations omitted).]

The Court rejected the trial court's presumed reasons for denying the continuance. *Id*. at 277-278. Of relevance to this case, the Court stated:

> The trial court also suggested that the prosecution failed to make "diligent efforts" to produce Dawson, as required by MCR 2.503(C)(2). Denial of a continuance is appropriate where a party fails to demonstrate diligent efforts to serve a subpoena. [*Id*. at 278 (citations omitted).]

> The police here successfully served the subpoena. Dawson had previously cooperated with the police and prosecution, and they had no reason to expect that his cooperation would not continue. We do not know what further efforts the court could have expected of the prosecution or police in these circumstances. We do not require the prosecutor to assume that every witness is a flight risk who must be monitored to ensure his attendance at trial. [*Id*. at 279.]

We find plaintiff's reliance on *Jackson* misplaced. First, in this case, the prosecution did not move to adjourn trial because of the witness's unavailability as soon as possible after ascertaining the facts. MCR 2.503(C)(1). The record reflects that the prosecution knew at least 48 hours before it disclosed to the trial court the witness's unavailability for trial on September 18, 2017. Despite knowing of the witness availability problem, the prosecution failed to formally move to adjourn. The prosecution waited until late during the hearing on September 15, 2017, after the trial court declined to stay the proceedings, before disclosing the witness's unavailability, even after the trial court had the parties meet in a conference room to try to resolve issues. Second, in *Jackson*, the prosecution successfully and timely served a subpoena on its witness one month before trial. In this case, the record neither indicates nor did the prosecution advise the trial court that it served its witness with a subpoena or even told her of the trial date. The record reflects that the prosecution made no attempt to make travel arrangements for its witness who had to cross an international border until a mere five days before trial. Therefore, we conclude that, although the witness's testimony was material to this case, the prosecution failed to make diligent efforts to produce the witness. Accordingly, the trial court did not abuse its discretion by denying an adjournment of the trial.

Plaintiff also argues that *People v Grace*, 258 Mich App 274; 671 NW2d 554 (2003) supports its position. We disagree. In *Grace*, the defendant moved for dismissal when key witnesses appeared for trial, but failed to reappear after a lunch break during the trial. *Id*. at 275. The prosecution had one insignificant witness available but declined to call the witness because the defense counsel objected to taking that witness's testimony before the complainant testified. *Id*. The prosecution requested an adjournment, which the trial court denied. *Id*. After the trial court gave the prosecution five minutes to inquire regarding the whereabouts of the missing witnesses and the prosecution did not locate them, the court granted the defendant's motion to dismiss with prejudice. *Id*. The witnesses returned shortly thereafter. The complainant returned late because of a long line at the courthouse security checkpoint. Nevertheless, the trial court denied the prosecution's motion to reinstate the charge. *Id*. at 276.

The prosecution argued on appeal that the trial court erred by not reinstating the charge after dismissing the case with prejudice. *Id*. at 276. This Court noted that the trial court

explained its reasons for denying the prosecution's request for an adjournment but held that the trial court abused its discretion by denying the adjournment. *Id.* This Court explained:

> This was a case involving fourth-degree criminal sexual conduct; it promotes the cause of justice to grant an adjournment in this case. The trial court erroneously stated that the prosecutor did not ask for more time to locate the witnesses. Actually, the transcript shows that the prosecutor did make the request along with a motion to adjourn. The trial court also erroneously stated that the prosecutor did not have any witnesses to call. Rather, the transcript shows that the prosecutor did tell the court before moving for an adjournment that she had a police officer present to call, although the prosecutor indicated that the officer was not a primary witness in the case and the prosecutor did not in fact call the officer. Further, the court denied the motion for an adjournment and dismissed the case after a mere seventeen-minute wait for the witnesses. The testimony of the missing witnesses was material and the prosecutor had duly attempted to locate them, factors that permit an adjournment. See MCR 2.503(C)(2). The trial court had no reason to expect that the witnesses' cooperation would not continue. [*Id.* at 277-278 (quotation marks, alteration, and citations omitted).]

We also find plaintiff's reliance on *Grace* misplaced. Although the trial court did not specifically articulate the requirements set forth in MCR 2.503(C), its remarks in this case reveal that it found that the prosecution failed to comply with MCR 2.503(C)(1) by not advising the court in a timely manner of a need for a continuance. The prosecution knew of the witness's unavailability two days earlier but did not promptly disclose its predicament to the court and counsel. The record indicates that the prosecution anticipated obtaining a stay pending appeal and only revealed the witness's unavailability when the trial court denied its request for stay.

Further, although the trial court did not use the phrase "due diligence," its remarks on the record indicated that it concluded that the prosecution failed to make diligent efforts to secure its witness's availability as required under MCR 2.503(C)(2). The record indicates that on August 15, 2017, the trial court scheduled the trial for September 18, 2017. The record indicates that the prosecution did not subpoena the witness for her appearance. Nothing in the record indicates that the prosecution advised her of the approaching trial date at any time between August 15, 2017 and September 13, 2017, when the prosecution attempted to arrange for the witness's travel to attend trial by calling her. Under these circumstances, the trial court did not abuse its discretion by denying the prosecution's motion to adjourn the trial.

Affirmed.

/s/ Patrick M. Meter
/s/ Deborah A. Servitto
/s/ James Robert Redford